```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
MARK F. COLEMAN,                         :
                                         :
                         Plaintiff,      :    20cv10503 (DLC)
                                         :
              -v-                        :    OPINION AND ORDER
                                         :
NEW YORK CITY DEPARTMENT OF HEALTH AND   :
MENTAL HYGIENE, ATHEA LONG, LA'DRAYA     :
MACON, and JUNE BRIDGEMOHAN,             :
                                         :
                         Defendants.     :
                                         :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff:
Mark F. Coleman pro se

For defendants:
Georgia M. Pestana
Donald C. Sullivan
Rachel Kessler
Office of Corporation Counsel NYC
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

　　　　Mark Coleman, proceeding pro se, has brought employment discrimination claims against his employer, the New York City Department of Health and Mental Hygiene ("DOHMH"), and three DOHMH employees.  He asserts that the defendants violated federal, state, and city law by discriminating against him on the basis of his disability, failing to accommodate his disability, and by retaliating against him.  The defendants have

moved to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., arguing that the amended complaint ("FAC") fails to state a claim.  For the following reasons, the motion to dismiss is granted in part.  Coleman's failure to accommodate and retaliation claims survive.

## Background

The following facts are drawn from the FAC and documents upon which it relies.  For the purposes of deciding this motion, plaintiff's factual allegations are accepted as true, and all reasonable inferences are drawn in plaintiff's favor.

I.   Coleman's History at DOHMH

Coleman asserts that he has spinal stenosis, spinal derangement, and arthritis.  On November 18, 2018, Coleman began working for DOHMH as a health navigator for the Health Engagement and Assessment Team ("HEAT").  As a health navigator, Coleman was required to canvass New York City to address the behavioral health needs of individuals encountered by first responders.  The job is largely field work that requires standing and walking for extended periods of time.  When Coleman accepted the position, he informed DOHMH that, despite walking with a cane, he could perform his job functions without any accommodations.

In March 2019, Coleman began experiencing pain while walking long distances.  On March 12, Coleman submitted a

request to the DOHMH Equal Employment Opportunity ("EEO") Office, seeking a position where he would not have to "walk more than one or two blocks because [he] has spinal derangement of both cervical and lumbar spines."  On July 17, Coleman requested an accommodation due to the serious pain created by the walking required in the position.  Defendant June Bridgemohan responded that the agency was looking into alternatives pertaining to his request.  On August 5, Coleman again requested an accommodation.  Coleman was informed on August 6 that the agency was still considering alternatives and that sometimes these requests took longer to process.  Later in August 2019, Coleman began an unpaid medical leave.  Coleman underwent surgery on December 17, 2019 and remained on medical leave until June 2020.

On June 1, 2020, Coleman returned to work and, due to the COVID-19 pandemic, he worked from home.  While working from home, Coleman made telephone calls to clients and wrote notes regarding their mental health issues.  Coleman was able to access the department's computer systems remotely.  In July 2020, at his employer's request, Coleman began working in a street outreach position, which often required walking long distances.  At some point, the pain associated with walking long distances returned.  In July 2020, Coleman modified his accommodation request and requested a position where no walking

3

was required.  On July 21, Coleman filed a charge with the Equal Employment Opportunity Commission ("EEOC") regarding the defendants' alleged discriminatory conduct.

On July 23, Coleman received an Incident Command System ("ICS") staffing notification, which notified Coleman that he was eligible to drive agency vehicles and the agency needed drivers during the pandemic to assist in the delivery of methadone.  Coleman's request for a reassignment to this position was denied.

On July 28, Coleman received another ICS staffing notification regarding temporary positions in a new venture called the COVID-19 Express Quickie Lab to staff nine COVID-19 test locations across the city.  Coleman's request for a reassignment to this position was also denied.

Coleman took medical leave in September 2020 and Coleman remains on unpaid medical leave from DOHMH.  On October 21, 2020, plaintiff filed an amendment to his EEOC charge to include retaliation.  The EEOC issued Coleman a right-to-sue letter on November 9, 2020.

Coleman filed this action on December 11, 2020.  Defendants moved to dismiss on March 12, 2021.  On April 12, plaintiff filed the FAC.  On May 10, defendants moved to dismiss the FAC.

The motion became fully submitted on December 3, and on December 10, the case was reassigned to this Court.

## Discussion

Coleman alleges disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. ("NYCHRL"); failure to accommodate in violation of the ADA, NYSHRL, and NYCHRL; retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII"), the ADA, the NYSHRL, and the NYCHRL; and race discrimination in violation of Title VII.[1]  The defendants have moved to dismiss Coleman's complaint in its entirety.

In evaluating a motion to dismiss for failure to state a claim, a court must decide "whether the complaint's allegations, taken as true and afforded all reasonable inferences, state a plausible claim for relief."  Henry v. Cty. of Nassau, 6 F.4th

---

[1] In his submission in opposition to the defendants' motion to dismiss, Coleman states that he "releases" defendants from "all claims of race discrimination."  The defendants' motion to dismiss that claim will therefore be granted.  Coleman's submission does not respond to the defendants' argument that individuals cannot be held liable for violations of the ADA or Title VII.  The ADA and Title VII claims as to the individual defendants are thus abandoned, and the defendants' motion to dismiss them are granted.

324, 331 (2d Cir. 2021).  A claim is sufficiently plausible to withstand a motion to dismiss when the "factual content" of the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Cavello Bay Reinsurance Ltd. v. Shubin Stein, 986 F.3d 161, 165 (2d Cir. 2021) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement."  Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020) (quoting Ashcroft, 556 U.S. at 678).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 189 (2d Cir. 2020) (quoting Ashcroft, 556 U.S. at 663).

Coleman is proceeding pro se, and his submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest."  Meadows v. United Services, Inc., 963 F.3d 240, 243 (2d Cir. 2020) (citation omitted). "Nonetheless, a pro se complaint must state a plausible claim for relief."  Darby v. Greenman, 14 F.4th 124, 128 (2d Cir. 2021) (citation omitted).

I.   Statute of Limitations

A claim under the ADA must be dismissed as untimely if the plaintiff has not filed a complaint with the EEOC or the equivalent state agency within 300 days of the occurrence of the alleged illegal act.  Harris v. City of New York, 186 F.3d 243, 247 n.2 (2d Cir. 1999); 42 U.S.C. § 12117(a).  "The filing deadline for the formal complaint is not jurisdictional and, like a statute of limitations, is subject to equitable tolling." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003), as amended (July 29, 2003).  Equitable tolling is only appropriate in "certain rare and exceptional circumstances."  Martinez v. Superintendent of E. Corr. Facility, 806 F.3d 27, 31 (2d Cir. 2015), as corrected (Nov. 12, 2015) (citation omitted).  The plaintiff "must establish that (a) extraordinary circumstances prevented him from filing a timely petition, and (b) he acted with reasonable diligence during the period for which he now seeks tolling."  Id. (citation omitted).

Coleman filed his EEOC charge on July 21, 2020.  Therefore, his federal claims concerning events occurring prior to September 25, 2019 -- 300 days prior to July 21, 2020 -- are time-barred unless an exception applies.  In opposition to the motion to dismiss, Coleman seeks 120 days of equitable tolling,

from March 2020 until July 2020, due to the unprecedented COVID-19 pandemic.  Coleman argues that, due to the pandemic, the New York City EEOC office closed its doors to the public, forcing employees to file discrimination charges online.

Coleman has not shown that the pandemic prevented him from filing a EEOC charge earlier.  In fact, Coleman notes that the EEOC developed a procedure for handling discrimination charges during the pandemic, as employees were directed to file charges through a public portal and intake appointments were completed by telephone.  Thus, any allegations in the FAC regarding events prior to September 25, 2019 are time-barred.

Coleman went on medical leave on September 25, 2019 and did not return to work until June 1, 2020.  Therefore, this Opinion addresses Coleman's federal claims to the extent they refer to events following June 1, 2020.  In essence, Coleman argues that DOHMH failed to accommodate his requests to work from home or, in the alternative, to be reassigned to the COVID-19 Quickie Lab or the agency driver position created during the pandemic to deliver methadone.  This Opinion thus analyzes the failure to accommodate claim first.

II.  Failure to Accommodate

The ADA prohibits "discriminat[ion] against a qualified individual" in the "terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  This provision "requires employers to take certain affirmative steps to assist employees with disabilities," which include "reasonabl[y] accommodat[ing] . . .the known physical or mental limitations of an otherwise qualified individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business."  Bey v. City of New York, 999 F.3d 157, 165 (2d Cir. 2021) (quoting 42 U.S.C. § 12112(b)(5)(A)).  Under the ADA, the plaintiff must show that:

> (1) the plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, the plaintiff could perform the essential functions of his job at issue; and (4) the employer has refused to make such accommodations.

Id.  NYSHRL failure to accommodate claims are governed by the same legal standards as federal ADA claims.  See Fox v. Costco Wholesale Corp., 918 F.3d 65, 76 (2d Cir. 2019) ("NYSHRL claims are analyzed as ADA claims.").  That standard also applies in general terms to NYCHRL failure to accommodate claims.[2]  A reasonable accommodation may include, inter alia,

---

[2] While NYCHRL claims are treated more liberally than parallel ADA and NYSHL claims, any distinction in the construction of the claims is irrelevant, since they all survive this motion.

> job restructuring, part-time or modified work
> schedules, reassignment to a vacant position,
> acquisition or modification of equipment or devices,
> appropriate adjustment or modification of
> examinations, training materials or policies, [or] the
> provision of qualified readers or interpreters.

Stevens v. Rite Aid Corp., 851 F.3d 224, 230 (2d Cir. 2017) (quoting 42 U.S.C. § 12111(9)).

The FAC sufficiently alleges a failure to accommodate. Defendants do not dispute that the plaintiff is a person with a disability or that the employer had notice of his disability. Coleman pleads that he could perform the essential functions of the job while working from home and his employer refused to make such an accommodation.  The defendants argue that the Agency is not required to accommodate the plaintiff if the accommodation eliminates one of the essential functions of the job.  But here, Coleman alleges that he successfully worked from home when he first returned to work from medical leave on June 1, 2020. Coleman sufficiently pleads that he was able to perform essential aspects of his role, for instance performing wellness checks, while working remotely.  Plaintiff also alleges that other employees were allowed to continue to work from home, emphasizing that the essential functions of the job could be completed from home.

Coleman also pleads that the DOHMH failed to accommodate his disability by reassigning him to the COVID-19 Quickie Lab or

10

driver position.  A reasonable accommodation may also include reassignment to a vacant position.  See McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92, 97-98 (2d Cir. 2009).  Coleman sufficiently pleads that, at the time he sought an accommodation, there were two vacant positions to which he could have been reassigned.  Thus, Coleman's failure to accommodate claim against the DOHMH survives.[3]

III. Disparate Treatment

Coleman brings a claim of discrimination based on disparate treatment.  This claim is dismissed.  To establish a prima facie case under the ADA of discrimination based on disparate treatment, the plaintiff must show that

> (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

Fox, 918 F.3d at 71 (citation omitted).  "A showing of disparate treatment -- that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group -- is a recognized method of raising an inference of discrimination for the purposes of making out a

---

[3] Whether the option to work from home or the other two positions have survived as the pandemic recedes is not an issue that may be resolved on a motion to dismiss.

11

prima facie case." Ruiz v. Cty. of Rockland, 609 F.3d 486, 493 (2d Cir. 2010) (citation omitted).  An adverse employment action

> must be more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

Id. at 71-72 (citation omitted).  After the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to show a "legitimate, nondiscriminatory reason for the employer's conduct".  Id.  (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  The same burden shifting test applies to disparate treatment claims under the NYSHRL.  See id. at 76 ("NYSHRL claims are analyzed as ADA claims.")

Under the NYCHRL, it is an unlawful discriminatory practice for an employer or an employee thereof, because of an individual's "actual or perceived" disability, to discriminate against an individual in the "terms, conditions, or privileges of employment."  N.Y.C. Admin. Code § 8-107(1)(a).  A claim of disability discrimination under the NYCHRL is construed more liberally than the federal or state law claim.  See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013).  NYCHRL discrimination claims need not allege an adverse employment action, instead only that the plaintiff was

12

treated "less well, at least in part for a discriminatory reason." Id. at 110 n.8.

Coleman fails to state a claim of discrimination under the ADA or NYSHL.  In essence, his claim is that his employer failed to accommodate his disability, and that claim will proceed.  Coleman has not sufficiently alleged that he suffered an adverse employment action that was due to his disability.  In opposition to the motion to dismiss, Coleman argues that he was denied the same opportunity to work from home as other navigators and was not chosen to work in the Express Quickie Lab and as a driver.  Coleman has not sufficiently pleaded that the DOHMH's failure to allow him to work from home or to hire him for either of these two temporary positions was because of his disability.[4]  Coleman does not point to a comparator to show that the DOHMH treated him less favorably than a similarly situated employee without a disability, recite any discriminatory comments or otherwise plausibly plead a claim of discrimination.

The Amended Complaint fails to satisfy even the less demanding standard of the NYCHRL.  Coleman does not sufficiently

---

[4] In opposition to the motion to dismiss, Coleman complains that DOHMH denied his request on August 14, 2020 for time off for a day to process the mental impact of finding a dead body during his street outreach position.  In this argument, Coleman attempts to resurrect a claim that he failed to plead in the FAC.  In any event, Coleman fails to tie this complaint to his disability.

13

allege any facts to support the claim that he was treated less well than other non-disabled employees for any discriminatory reason, instead stating only, in general terms, that he was not given the same opportunity as others in the agency.  Thus, Coleman's discrimination claim is dismissed.

IV.  Retaliation

To state a claim of retaliation under federal law or the NYSHRL, the plaintiff must plausible allege that "he engaged in a protected activity, that he suffered an adverse employment action, and that a causal connection exists between that protected activity and the adverse employment action."  Fox, 918 F.3d at 72-73; see Widomski v. State University of New York (SUNY) at Orange, 748 F.3d 471, 476 (2d Cir. 2014) (ADA); Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (NYSHRL).  Retaliation claims under the NYCHRL are analyzed similarly.  To survive a motion to dismiss under the NYCHRL, the plaintiff must allege that he "took an action opposing [his] employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  Mihalik, 715 F.3d at 112.

Coleman's retaliation claim survives.  Defendants do not dispute that filing an EEOC charge is a protected activity.

Coleman pleads that he was forced to work street outreach and was denied the opportunity to work in either one of the temporary positions or remotely because he filed an EEOC charge. Thus, Coleman sufficiently states a claim for retaliation against the DOHMH.

## Conclusion

Defendants' May 10, 2021 motion to dismiss is granted in part. Coleman may proceed with all failure to accommodate and retaliation claims against defendant the New York City Department of Health and Mental Hygiene. Coleman may proceed with the failure to accommodate and retaliation claims against the individual defendants pursuant to the NYHRL and NYCRL. All other claims, including his Title VII claims, are dismissed.

Dated: New York, New York
March 9, 2022

_____
DENISE COTE
United States District Judge

15